UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SALVATORE GIZZO,

            Plaintiff,

     -v-

SORAYA BEN-HABIB, CLINTON I. YOUNG, and
THE CITY OF MOUNT VERNON,

          Defendants.

Case No. 13-CV-2139 (KMK)

OPINION AND ORDER

Appearances:

Jonathan D. Kraut, Esq.
Friedman, Harfenist, Langer & Kraut, LLP
Purchase, NY
*Counsel for Plaintiff*

Neil Stuart Torczyner, Esq.
Friedman, Harfenist, Kraut & Perlstein
Lake Success, NY
*Counsel for Plaintiff*

Hina Sherwani, Esq.
City of Mount Vernon Corporation Counsel
Mount Vernon, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

       Plaintiff Salvatore Gizzo ("Plaintiff") brings this Action against Defendants Soraya Ben-Habib ("Ms. Ben-Habib"), Clinton I. Young ("Mr. Young"), and the City of Mount Vernon ("the City") (collectively, "Defendants"), alleging that Defendants deprived him of his constitutional rights to procedural and substantive due process under the Fourteenth Amendment and his contractual rights under a licensing agreement. Defendants move to dismiss Plaintiff's Complaint in its entirety. For the following reasons, Defendants' Motion is granted.

## I.  BACKGROUND

### A.  Factual Background

As alleged in Plaintiff's Complaint, the facts underlying the instant Action are fairly straightforward.  In 2008, Plaintiff was the owner of Samba Na Brasa, a Brazilian steakhouse located in the Fleetwood section of Mount Vernon ("Fleetwood") at 42 Broad Street.  (Compl. ¶ 11 (Dkt. No. 1).)  In or around November 2008, Mr. Young, who was at the time the mayor of the City, visited Plaintiff at Samba Na Brasa, and informed him that the residents of Fleetwood were unhappy because the only local supermarket was closing down.  (*Id.* ¶¶ 12–13.)  Mr. Young then stated to Plaintiff, "Do me a favor.  I need to give [the residents of Fleetwood] a supermarket—we'll give you whatever you need."  (*Id.* ¶ 14 (internal quotation marks omitted).)

After this conversation, Plaintiff and others acting on Plaintiff's behalf "began negotiating with [Mr. Young] and other City employees in an effort to transform the 42 Broad Street location into a supermarket," during which negotiations Plaintiff "indicated to [Mr. Young] and his employees that it was vital to the success of the supermarket that the patrons of the potential supermarket have an adequate supply of safe and inviting parking spaces available." (*Id.* ¶¶ 15–16.)  Because Mr. Young agreed with Plaintiff, "the two sides began to discuss meaningful parking improvements which could be made by the City to further a potential supermarket."  (*Id.* ¶ 17.)  Soon thereafter, Mr. Young and Plaintiff "came to an agreement that the best option for parking for the contemplated supermarket would be the Fleetwood Municipal Parking Garage."  (*Id.* ¶ 18.)

Following this agreement, in June 2009, Plaintiff, acting on behalf of Fleetwood Food Corporation ("FFC"), a New York corporation, and Mr. Young, acting on behalf of the City, entered into a Licensing Agreement, pursuant to which FFC was granted "the exclusive right,

license and privilege to use forty-five (45) designated parking spaces on the ground floor of the Fleetwood Municipal Parking Garage and fifteen (15) merchant use only parking spaces, all for the use of the contemplated supermarket," "[i]n exchange for [which] FFC became obligated pursuant to the License Agreement to pay [a monthly fee] with the right to prepay for any time period." (*Id.* ¶¶ 20–21 (internal quotation marks omitted).)  FFC was granted "the exclusive right, license, and privilege to use" the parking spaces until March 31, 2014, with "the option to renew . . . upon . . . [the] same terms and conditions for consecutive terms of five (5) years" through 2044, provided that Plaintiff was not in default.  (Compl. Ex. A(2), at 2–3.) Additionally, the Licensing Agreement "provided that FFC was granted permission to install an electric parking arm and any other necessary equipment for the purpose of entering and exiting the area containing the . . . [p]arking [s]paces," and required the City, at its sole cost and expense, to "make numerous improvements, alterations, installation and/or repairs" to the Fleetwood Municipal Parking Garage by September 1, 2009.  (*Id.* ¶¶ 24–25 (internal quotation marks omitted).)  The Licensing Agreement also stated that it would "be effective only to the extent that [FFC] and/or its successors and/or assigns operates and/or maintains a grocery store/supermarket at 42 Broad Street."  (*Id.* ¶ 22 (internal quotation marks omitted).)  By entering into the Licensing Agreement, the City "acknowledge[d] that [FFC] [was] relying on the . . . representations [contained therein] for the purpose of constructing and operating a grocery store/supermarket . . . , and that [FFC] would not enter into such a business venture if unable to use the [p]arking [s]paces" described therein.  (*Id.* ¶ 23 (first alteration in original) (internal quotation marks omitted).)

"Subsequent to the execution of the Licensing Agreement, [Plaintiff] closed Samba Na Brasa and began renovating 42 Broad Street in order to transform it into a supermarket,"

"retain[ing] the services of Nima Badaly [("Mr. Badaly")] as architect for the renovations."
(*Id.* ¶¶ 26–27.)  Mr. Badaly is the former husband of Ms. Ben-Habib, who was the City's First
Deputy Building Commissioner, and who Plaintiff claims was also "the de facto Building
Commissioner and . . . the decision maker for [the City's] Building Department."  (*Id.* ¶¶ 8, 36.)
According to Plaintiff, Mr. Badaly and Ms. Ben-Habib "have children together and thus maintain
a close relationship."  (*Id.* ¶ 37.)  Plaintiff also entered into negotiations with Key Food Co-
operative, Inc. ("Key Food") "to allow FFC to operate the contemplated supermarket as a Key
Food."  (*Id.* ¶ 28.)

Plaintiff claims that "the City never completed its' [sic] responsibilities under the
Licensing Agreement."  (*Id.* ¶ 30.)  Specifically, "[a]lthough the Licensing Agreement required
the allocation of forty-five spaces for supermarket parking, the City never designated the
requisite number."  (*Id.* ¶ 31.)  Additionally, "[a]lthough the City permitted the installation of a
parking arm in the garage which was necessary to safeguard the parking spaces, the City refused
to provide power for the parking arm, after the device was agreed to and then constructed by
FCC at its sole expense."  (*Id.* ¶ 32.)  Further, "[a]lthough the Licensing Agreement required the
repair and maintenance of the elevator in the garage, the City never repaired the elevator to
working condition."  (*Id.* ¶ 33.)

Notwithstanding these issues, FCC pressed onwards with the renovation, spending over
$3 million in the process.  (*Id.* ¶ 34.)  In or around April 2010, FCC terminated the services of
Mr. Badaly.  (*Id.* ¶ 35.)  Plaintiff claims that, following Mr. Badaly's termination, "the City's
Building Department began to harass FFC by delaying the determination of permits and
inspections on multiple occasions and requiring FFC to wade through numerous levels of red
tape which had [previously] not existed."  (*Id.* ¶ 38.)  The City Building Department even

"invented problems" on the date that FFC was to open the Key Food "in order to delay the scheduled opening of the supermarket." (*Id.* ¶ 39.) And, "[a]lthough the City Building Department was stonewalling progress on FFC's supermarket, it streamlined the application process for [a] competing supermarket" "which sought to open in close proximity." (*Id.* ¶¶ 40–41.)

By the time FFC opened the supermarket in July 2010, "the City had still not completed the work required under the Licensing Agreement." (*Id.* ¶¶ 42–43.) In fact, "[n]otwithstanding FFC's constant complaints to the City about the City's failure to abide by the Licensing Agreement, the work required [thereunder] was never completed." (*Id.* ¶ 44.) The consequent "lack of adequate parking for the Key Food immediately began to impact on FFC's profits," causing "patrons [to] stop[] shopping" there. (*Id.* ¶ 45.) Eventually, FFC filed for Chapter 7 Bankruptcy. (*Id.* ¶ 47.) After FFC's bankruptcy trustee assigned certain of FFC's claims against the City to Plaintiff, Plaintiff initiated this Action. (*Id.* ¶ 48.)

B.  Procedural Background

Plaintiff filed his Complaint on April 1, 2013. (*See* Dkt. No. 1.) Plaintiff asserts five causes of action against Defendants therein. First, Plaintiff claims that, "[a]s a result of the actions and inactions of [Mr. Young] and the City" in failing to "perform the actions which [the City] was obligated to take under the Licensing Agreement," "[Plaintiff] and FFC were deprived of their right to procedural due process." (Compl. ¶¶ 52, 56.) Second, Plaintiff claims that he and FFC were also deprived of their right to procedural due process "[a]s a result of [Ms. Ben-Habib's] campaign to obstruct the progress in opening the Key Food supermarket." (*Id.* ¶ 64.) Third, Plaintiff claims that Ms. Ben-Habib's "campaign" also deprived Plaintiff of his right to substantive due process. (*Id.* ¶ 72.) In his fourth cause of action, which Plaintiff titles "Failure

5

to Train/Supervise—*Monell* Claim," Plaintiff claims that the deprivations of his and FFC's constitutional rights stemming from Ms. Ben-Habib's "campaign" were caused in part by the City's failure "to adequately provide for a system of checking for conflicts of interest in relation to projects submitted by [Mr. Badaly] for approval by the City's Building Department," as well as its failure "to adequately supervise the employees of the City's Building Department to prevent special treatment being given to projects involving plans drawn by [Mr. Badaly]." (*Id.* ¶¶ 75–79.)  Fifth, Plaintiff claims that the City "unilaterally and materially breached the Licensing Agreement through numerous acts and omissions." (*Id.* ¶ 84.)

On November 6, 2013, Defendants filed their Motion To Dismiss. (*See* Dkt. Nos. 12–14.)  Plaintiff filed his Opposition thereto on December 6, 2013, (*see* Dkt. No. 15), to which Defendants replied on December 20, 2013, (*see* Dkt. No. 16), at which point Defendants' Motion was fully submitted.

## II.  DISCUSSION

### A.  Standard of Review

Defendants move to dismiss Plaintiff's Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, internal quotation marks, and alterations omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks

and alterations omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a

right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although "once a claim

has been stated adequately, it may be supported by showing any set of facts consistent with the

allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a

claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her]

claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*;

*see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for

relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense.  But where the well-pleaded facts do not permit the court to infer

more than the mere possibility of misconduct, the complaint has alleged—but it has not

'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in

original) (quoting Fed.R.Civ.P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous

departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock

the doors of discovery for a plaintiff armed with nothing more than conclusions.").

    "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the

factual allegations contained in the complaint."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per

curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the

sufficiency of a complaint we accept as true all factual allegations . . . ." (internal quotation

marks omitted)); *Aegis Ins. Servs., Inc. v. 7 World Trade Co.,* 737 F.3d 166, 176 (2d Cir. 2013)

("In reviewing a dismissal pursuant to Rule 12(b)(6), we . . . accept all factual allegations in the

complaint as true . . . ." (internal quotation marks and alterations omitted)).  Further, "[f]or the

purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in

favor of the plaintiff."  *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y.

2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n

ruling on a 12(b)(6) motion, . . . a court may consider the complaint[,] . . . any written instrument

attached to the complaint as an exhibit[,] or any statements or documents incorporated in it by

reference," as well as "matters of which judicial notice may be taken, and documents either in

plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."

*Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*, 742 F.3d 42, 44 n. 1 (2d

Cir. 2014) (citation, internal quotation marks, and some alterations omitted); *see also Leonard F.*

*v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) ("In adjudicating a Rule 12(b)(6)

motion, a district court must confine its consideration to facts stated on the face of the complaint,

in documents appended to the complaint or incorporated in the complaint by reference, and to

matters of which judicial notice may be taken." (internal quotation marks omitted)); *Hendrix v.*

*City of New York*, No. 12–CV–5011, 2013 WL 6835168, at *2 (E.D.N.Y. Dec. 20, 2013) (same).

    B.  Analysis

        1.  Procedural Due Process

    Plaintiff's first two causes of action allege a violation of his procedural-due-process

rights.  In his first cause of action, Plaintiff asserts that his procedural-due-process rights were

violated by Mr. Young's and the City's "actions and inactions" in failing to "perform the actions

which [the City] was obligated to take under the Licensing Agreement."  (Compl. ¶¶ 52, 56.)  In

his second cause of action, Plaintiff asserts that his procedural-due-process rights were violated

by Ms. Ben-Habib's "campaign to obstruct the progress in opening the Key Food supermarket."

(*Id.* ¶ 64.)

    The Fourteenth Amendment to the United States Constitution provides in part that "[n]o

State shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S.

Const. amend. XIV, § 2; *see also Marino v. City Univ. of N.Y.*, — F. Supp. 2d —, 2014 WL 1874855, at *10 (E.D.N.Y. May 9, 2014) (same).  "To plead a violation of procedural due process, . . . a plaintiff must first identify a property right, second show that the government has deprived him of that right, and third show that the deprivation was effected without due process." *J.S. v. T'Kach*, 714 F.3d 99, 105 (2d Cir. 2013) (alterations, emphasis, and internal quotation marks omitted); *see also* C*hrebet v. Cnty. of Nassau*, No. 09-CV-4249, 2014 WL 2527225, at *6 (E.D.N.Y. June 5, 2014) (same).

"The Second Circuit instructs" that "[t]he threshold issue is always whether the plaintiff has a property . . . interest protected by the Constitution." *Morales v. New York*, — F. Supp. 2d —, 2014 WL 2158979, at *15 (S.D.N.Y. May 22, 2014) (quoting *Narumanchi v. Bd. of Trs.*, 850 F.2d 70, 72 (2d Cir. 1988)).  "Such property interests cannot be found on the face of the Constitution, but rather are created, and their dimensions are defined by, existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits." *Looney v. Black*, 702 F.3d 701, 706 (2d Cir. 2012) (alterations and internal quotation marks omitted) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)).  Thus, "[w]hen determining whether a plaintiff has a claim of entitlement, [courts] focus on the applicable statute, contract or regulation that purports to establish" it.  *Brown v. New York*, 975 F. Supp. 2d 209, 242 (N.D.N.Y. 2013) (internal quotation marks omitted) (quoting *Martz v. Inc. Vill. of Valley Stream*, 22 F.3d 26, 30 (2d Cir. 1994)).

However, "[a] 'unilateral expectation' is not sufficient to establish a constitutionally protected property right."  *Looney*, 702 F.3d at 706 (quoting *Roth*, 408 U.S. at 577).  "Rather, a plaintiff must have 'a legitimate claim of entitlement to' the alleged property interest."  *Id.* (quoting *Roth*, 408 U.S. at 577); *see also Harrington v. Cnty. of Suffolk*, 607 F.3d 31, 34 (2d Cir.

2010) ("To have a property interest in a benefit, a person clearly must have more than an abstract

need or desire and more than a unilateral expectation of it.  He must, instead, have a legitimate

claim of entitlement to it." (internal quotation marks omitted) (quoting *Town of Castle Rock,*

*Colo. v. Gonzales*, 545 U.S. 748, 756 (2005))).

   Here, Plaintiff claims that "[t]he Licensing Agreement executed with the City gave FFC

and [Plaintiff] a property right in the parking spaces and improvements contemplated by both

parties under the Licensing Agreement."  (Compl. ¶ 50.)  In other words, Plaintiff's "claim is

premised on a contract right," (Pl.'s Mem. of Law in Opp'n to Defs.' Mot. To Dismiss ("Pl.'s

Mem.") 13)—his position is that he and FFC "maintained a property interest in the [L]icensing

[A]greement with the City," (*id.* at 18), which is a property interest that the Due Process Clause

protects.  For their part, Defendants claim that Plaintiff's argument "that the Licensing

Agreement between the parties created a constitutionally protected property interest" is "without

merit."  (Defs.' Mem. of Law in Supp. of Defs.' Mot. To Dismiss Pl.'s Compl. ("Defs.' Mem.")

13–14.)  The Court agrees with Defendants.

   The Second Circuit has noted that, "although a public contract can confer a protectible

benefit, not every contract does so."  *Martz*, 22 F.3d at 30; *see also Walentas v. Lipper*, 862 F.2d

414, 418 (2d Cir. 1988) ("[I]t is relatively clear that a contract dispute, in and of itself, is not

sufficient to give rise to a cause of action under section 1983." (citations omitted)); *Maglietti v.*

*Nicholson*, 517 F. Supp. 2d 624, 636 (D. Conn. 2007) ("Not every contractual benefit rises to the

level of a constitutionally protected property interest." (citation omitted)).  Indeed, "the type of

interest a person has in the enforcement of an ordinary commercial contract often is qualitatively

different from the interests the Supreme Court has thus far viewed as property entitled to

procedural due process protection."  *Martz*, 22 F.3d at 30; *see also Walentas*, 862 F.2d at 418

10

("There is a distinction between the breach of an ordinary contract right and the deprivation of a protectible property interest within the meaning of the due process clause."). Therefore, the operative question is the following one: "[W]hat is necessary to elevate a mere contract right to the level of a protectible entitlement[?]" *Local 342, Long Island Pub. Serv. Emps., UMD, ILA, AFL-CIO v. Town Bd. of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994).

In answering this question, the starting point within the Second Circuit is *S & D Maintenance Co. v. Goldin*, 844 F.2d 962 (2d Cir. 1988). *See id.* at 963 ("This appeal concerns primarily consideration of the circumstances under which a governmental contract may be said to create a property interest protected by procedural due process."). There, S & D Maintenance Co., Inc. ("S & D") entered into a contract with New York City to maintain the City's on-street parking meters for a two-year period. *Id.* at 964. Approximately two years later, as that contract was set to expire, S&D obtained a second contract from the City to maintain the on-street meters for the following two years. *Id.* At some point, S & D submitted invoices for work performed under the contracts to the Commissioner of the City's Department of Transportation, who certified the stated amounts. *Id.* However, the City Comptroller refused to authorize the City Commissioner of Finance to pay the invoices. *Id.* S & D was informed "that payment would be suspended pending a payment audit." *Id.* (internal quotation marks omitted). It later emerged "that payment was being withheld pending a criminal investigation into corruption in City government"—specifically, state and federal agencies were investigating "the circumstances surrounding the award of [the first] contract to S & D." *Id.* Following this revelation, S & D sued the City and six City officials, claiming that their actions had "deprived it of . . . property . . . interests without due process of law." *Id.* at 965. The Second Circuit disagreed:

11

The present case requires that we determine whether S & D has a contractual right giving rise to a "legitimate claim of entitlement" and thus a constitutionally protected property interest under [*Board of Regents v.*] *Roth*[, 408 U.S. 564 (1972)].  In one sense, of course, every enforceable contract right can be said to be an entitlement. As long as a state provides judicial remedies for the enforcement of contracts, either specific performance or damages for breach, every person holds a legitimate expectation that his contractually conferred rights are secure.  And whenever a person contracts with a state, breach by the state can be considered a denial of his entitlement to performance of the contract.  If the concept of "entitlement" were this expansive, federal courts could be asked to examine the procedural fairness of every action by a state alleged to be in breach of its contracts.  Yet, as the Seventh Circuit has observed, "[w]e must bear in mind that the Fourteenth Amendment was not intended to shift the whole of the public law of the states into the federal courts" . . . .

. . . [T]he doctrinal implications of constitutionalizing all public contract rights would raise substantial concerns, and we seriously doubt that *Roth* and its progeny portend such a result . . . .  An interest in enforcement of an ordinary commercial contract with a state is qualitatively different from the interests the Supreme Court has thus fair viewed as "property" entitled to procedural due process protection. *Goldberg v. Kelly*, [397 U.S. 254 (1970),] involved entitlement to welfare benefits conferred by statute upon our poorest citizens to provide for their immediate well-being, if not survival. . . .  *Roth* . . . and *Perry v. Sindermann*, [408 U.S. 593 (1972),] concerned claims to tenured status in public employment.  In these contexts, the Due Process Clause is invoked to protect something more than an ordinary contractual right.  Rather, procedural protection is sought in connection with a state's revocation of a *status*, an estate within the public sphere characterized by a quality of either extreme dependence in the case of welfare benefits, or permanence in the case of tenure, or sometimes both, as frequently occurs in the case of social security benefits.  Without doubt, *Goldberg*, *Roth*, and subsequent cases have accorded procedural due process protection to interests that extend well beyond actual ownership of real estate, chattels, or money.  But we hesitate to extend the doctrine further to constitutionalize contractual interests that are not associated with any cognizable status of the claimant beyond its temporary role as a governmental contractor.

Thus far, the course of the law in this Circuit has not moved beyond according procedural due process protection to interests other than those well within the contexts illustrated by *Goldberg* and *Roth*.

*Id.* at 966–67 (citations, footnotes, and some internal quotation marks omitted) (citing, *inter alia*,

*Brown v. Brienen*, 722 F.2d 360, 364 (7th Cir. 1983)).

However, although the Second Circuit strongly suggested in the above-described passage

that a government contract like that at issue in *S & D Maintenance* is not "property" protected by

the Due Process Clause, it ultimately grounded its holding in a different rationale, and thus did

not reach that question.  S & D claimed that it had a "right to continuation of [one of the]

contract[s] during its term, *i.e.*, a right to continue rendering service and to receive future

payment," as well as a "right to prompt payment for services already rendered."  *Id.* at 967.  As

to S & D's first asserted right, the court found that it "would not be a protected right, even if [the

court] were to analogize S & D's service contract to an employment contract," because "[i]n the

employment context, a property interest arises only where the state is barred, whether by statute

or contract, from terminating (or not renewing) the employment relationship *without cause*."  *Id.*

But S & D's contract with the City did not contain "a for-cause provision sufficient to create a

cognizable property interest."  *Id.* at 968.  In fact, the contract stated that the City could "at any

time terminate [the] [c]ontract by written notice to [S & D]."  *Id.* (internal quotation marks

omitted).  And as to S & D's second asserted right, the court found that "[a] close analysis of the

sources of the alleged property right in prompt payment," including the contracts and certain

New York statutes, also "reveal[ed] the absence of a clear entitlement."  *Id.* at 969.

Given that the Second Circuit thus essentially decided *S & D Maintenance* on its facts,

"one could read the court's ruling . . . narrowly to preclude only those [procedural-due-process]

claims resting on contracts terminable at will," but subsequent decisions have not taken this

approach, focusing instead on that portion of the court's ruling that emphasized "dependence and

permanence as indicia of protected status."  Zachary D. Krug, Note, *Due Process and the

Problem of Public Contracts: A Critical Look at Current Doctrine*, 89 Cornell L. Rev. 1044,

1051 (2004).  For example, in *Walentas v. Lipper*, 862 F.2d 414 (2d Cir. 1988), the very next

case in which the Second Circuit had occasion to consider whether a government contract

created a protectible property interest, the court emphasized that "a contract dispute, in and of

13

itself, is not sufficient to give rise to a cause of action under section 1983." *Id.* at 418.
According to the court, although "the Supreme Court [had] held that the term property does
include an expectation of continued employment based upon a contract," "the Court [had also]
carefully limited the rule to situations which involve contracts with tenure provisions and the
like, or where a clearly implied promise of continued employment has been made." *Id.*[1]

Particularly informative is *Martz v. Inc. Village of Valley Stream*, 22 F.3d 26 (2d Cir.
1994). There, Martz had been appointed by the Board of Trustees of the Village of Valley
Stream ("the Board") to a one-year term as Deputy Village Attorney for the Village's Board of
Zoning Appeals by Board resolution, which "provided that she was to be paid an annual
retainer" in exchange for performing certain work. *Id.* at 27–28. "A separate resolution
empowered the Board . . . to contract with Martz to perform additional legal services on a case-
by-case basis," and "also provided that she would be compensated at a fixed hourly rate and
required Martz to submit verified written vouchers before receiving payment." *Id.* at 28. After
Martz completed work on a new zoning code for the Village, the Board "suggested that she
submit her final bill for services rendered." *Id.* Martz thereafter "submitted verified written
vouchers to her supervisor," which were then signed by that supervisor and members of the
Board and given to the Village Treasurer. *Id.* But after a new mayor and three new trustees took
office following an election, the Village withheld payment. *Id.* "According to the Village,
Martz was refused payment because the vouchers were viewed as being submitted and approved
under extraordinarily suspicious circumstances." *Id.* Martz eventually sued the Village for the

---

[1] "[H]owever, as in *S & D Maintenance*," the *Walentas* court held that it did not need to
"definitively resolve the question whether the contractual rights asserted" were "of the kind
protectible under section 1983, because they had not in any event achieved that concreteness of
entitlement required by *Roth* and its progeny." 862 F.2d at 418–19.

14

unpaid fees, arguing that "the Village's failure to compensate her, pursuant to the submitted

vouchers, for services rendered [gave] rise to a cognizable claim for damages under the

provisions of 42 U.S.C. § 1983 because she [had] a protected property interest in the receipt of

this payment." *Id.* at 29.

The Second Circuit found that Martz lacked a protectible property interest. *Id.* In

reaching that conclusion, the court discussed various New York statutes that Martz cited, but

found that those laws did not "provide[] her with a clear entitlement to payment for the services

described in her vouchers." *Id.* at 30. In distinguishing a case that Martz cited in support of her

argument, which case had "involved a claim for reimbursement of overpayments made to a

Medicaid provider pursuant to a statutorily prescribed reimbursement rate," the court stated that,

"[u]nlike the case of a Medicaid provider, the only right to payment in this case is predicated

upon an alleged breach of contract." *Id.* at 30. The court also distinguished "other cases cited by

Martz [as] inapposite because they address[ed] situations in which an entitlement to benefits

clearly was recognized in state law." *Id.* In conclusion, before reproducing language from

*S & D Maintenance* described above, the court stated the following:

> In light of the foregoing analysis, it is apparent that New York [statutory law]
> does not provide Martz with a legitimate claim of entitlement to the benefits of
> her contract with the Village. Rather, Martz simply is alleging the breach of an
> ordinary contract. The right to payment on such a contract does not rise to the
> level of a constitutionally protected property interest.

*Id.* at 31.

Notably absent from the court's analysis was any discussion of whether Martz could have

had a protectible interest in payment under the contract by virtue of the contract itself. The clear

implication of this omission is that the court assumed that she could not. This implication is

reinforced by the penultimate sentence of the court's discussion of the issue, in which it stated

that, "where a breach of contract does not give rise to a deprivation of a protectible property interest, plaintiff's exclusive remedy lies in state court for breach of contract," *id.* (internal quotation marks omitted)—a statement that, if run-of-the-mill government contracts gave rise to protectible property interests through their own operation, would be entirely circular.

Several broad principles can be derived from this line of cases. The first principle is that "ordinary" or "routine" government contracts do not, by themselves, give rise to such an interest. *See Martz*, 22 F.3d at 30; *Walentas*, 862 F.2d at 418; *S & D Maintenance*, 844 F.2d at 969; *see also Grasson v. Bd. of Educ. of Orange*, — F. Supp. 2d —, 2014 WL 2515408, at *7 (D. Conn. June 4, 2014) ("Courts in the Second Circuit have been reluctant to expand due process protections to ordinary commercial contracts."); *E. Amherst Plumbing, Inc. v. Thompson*, No. 12-CV-195, 2013 WL 5442263, at *5 (W.D.N.Y. Sept. 27, 2013) ("[T]he Second Circuit has avoided extending procedural due process protections to property interests such as . . . the right to continuation of or to payment under a commercial contract."); *35-41 Clarkson LLC v. N.Y.C. Hous. Auth.*, No. 11-CV-6770, 2012 WL 5992094, at *5 (S.D.N.Y. Nov. 30, 2012) (distinguishing "one-off commercial interactions" from "entitlements subject to protection under the Due Process Clause"); *Res. Servs., LLC v. City of Bridgeport*, 590 F. Supp. 2d 347, 358 (D. Conn. 2008) ("The Second Circuit has held that, where a complaint alleges the breach of an ordinary contract, the right to payment on such a contract does not rise to the level of a constitutionally protected property interest." (internal quotation marks omitted)); *Ganci v. N.Y.C. Transit Auth.*, 420 F. Supp. 2d 190, 202 (S.D.N.Y.) (concluding that a "*routine* contract between a provider of services and its customers, analogous to other commercial arrangements in which funds are advanced prior to the provision of a service," did "not give rise to protected property interests in the Due Process context"), *aff'd*, 163 F. App'x 7 (2d Cir. 2005).

16

The second principle is that one characteristic that distinguishes an "ordinary" or "routine" government contract from the type of government contract that gives rise to a protectible property interest is that the latter protects its holder from the "state's revocation of a *status*, an estate within the public sphere characterized by a quality of either extreme dependence in the case of welfare benefits, or permanence in the case of tenure, or sometimes both." *S & D Maintenance*, 844 F.2d at 966 (footnote omitted); *see also Grasson*, 2014 WL 2515408, at *8 (finding that a terminated bus driver did not have a protectible property interest in his continued employment, which interest allegedly stemmed from a contract providing that he could only be fired for just cause, because the driver "was not dependent on the contract, because he contracted with" the school district, and because "the contract [did] not suggest permanence, because it had a five-year term"); *35-41 Clarkson LLC*, 2012 WL 5992094, at *5 (S.D.N.Y. Nov. 30, 2012) (inquiring into whether certain contracts "embod[ied] a status of either permanence or extreme dependence" in attempting to determine whether those contracts were "entitlements subject to protection under the Due Process Clause"); *Rosenfeld v. Port Auth. of N.Y. & N.J.*, 108 F. Supp. 2d 156, 166 (E.D.N.Y. 2000) ("Plaintiffs' alleged property interest . . . does not rise to [the] level [of either extreme dependence or permanence], as it is merely the product of their voluntary contractual relationship with defendants.").

The third and final principle is that employment contracts receive special treatment.  One court within the Second Circuit has even gone so far as to suggest that "the Second Circuit has found cognizable property interests in contracts *only in the employment context*."  *Malapanis v. Regan*, 340 F. Supp. 2d 184, 190 (D. Conn. 2004) (emphasis added), *aff'd*, 147 F. App'x 219 (2d Cir. 2005); *see also Bollenbach v. Bd. of Educ. of Monroe-Woodbury Cent. Sch. Dist.*, 659 F. Supp. 1450, 1474 n. 39 (S.D.N.Y. 1987) ("It is only where a breach of contract results in the loss

17

of employment that it can be equated with a deprivation of a property interest."); *Waltentas v. Lipper*, 636 F. Supp. 331, 335 (S.D.N.Y. 1986) ("While the line between common law property and contract has been 'frayed,' only where the breach of contract results in the loss of employment has it been equated with the deprivation of a property interest."), *aff'd sub nom. Walentas v. Lipper*, 862 F.2d 414 (2d Cir. 1988); *cf. S & D Maintenance*, 844 F.2d at 967 n.6 (describing the district court's decision in *Waltentas*, 636 F. Supp. at 335, as "an interesting effort to cabin the scope of interests entitled to procedural due process protection by drawing a line between employment contracts and all other contracts"); *Grasson*, 2014 WL 2515408, at *7 ("Were [the plaintiff] an employee, [the] Court's determination that the [defendant] could only terminate the contract for just cause might be sufficient to create a property interest."); *Am. Fed'n of State, Cnty. & Mun. Emps. (a/k/a AFSCME), Local 264 v. Tobe*, No. 04-CV-753, 2011 WL 6329908, at *7 (W.D.N.Y. Dec. 19, 2011) ("[A]n interest in wage increases, *as opposed to an interest in employment as a whole*, is not protected for the purposes of the Due Process Clause." (emphasis added)).[2]  To the extent such a limitation does in fact exist, it would make sense, for reasons the Ninth Circuit explained in a case to which the Second Circuit cited approvingly in *S & D Maintenance*:

> The prime protected category, which has supplied nearly all of the successful contract-based section 1983 actions, is that of employment contracts.  The seminal cases of *Roth* and *Perry* dealt with employment . . . .  What renders an employment contract protectible by the Fourteenth Amendment is often not clearly articulated;

---

[2] The accuracy of the *Malapanis* court's characterization of Second Circuit case law may have been called into question by *Manza v. Newhard*, 470 F. App'x 6 (2d Cir. 2012), an unpublished opinion in which the Second Circuit noted that it could not "conclude as a matter of law" that free water service, "provided to [a] property for well over 130 years" pursuant to "a contractual right," did "not merit constitutional protection."  *Id.* at 10.  However, *Manza* did nothing to undermine the emphasis on employment contracts within the Second Circuit, as explored below.

we are willing to accept the view that crucial factors are the security with which the interest is held under state law and its importance to the holder. We also believe that the focus of the latter factor is upon the importance of the interest to the holder *as an individual*. The right of an individual not to be deprived of employment that he or she has been guaranteed is more easily characterized as a civil right, meant to be protected by section 1983, than are many other contractual rights.

*San Bernardino Physicians' Servs. Med. Grp., Inc. v. San Bernardino Cnty.*, 825 F.2d 1404, 1409 (9th Cir. 1987) (alterations, internal quotation marks, and citation omitted).[3]

In *Hotel Syracuse, Inc. v. Young*, 805 F. Supp. 1073 (N.D.N.Y. 1992), the court elaborated on this rationale. There, the plaintiffs, a hotel and its owner, attempted to establish that their "contractual right to the benefits of owning and operating a hotel," which was rooted in a series of contracts and agreements that they had signed with the City of Syracuse, was a property interest protected by the Due Process Clause. *Id.* at 1082, 1083 & n.3. The court rejected this argument:

> Unlike a tenured employment situation, the contracts upon which plaintiffs in this case rely do not provide an interest as fundamental as an individual's employment. The importance to plaintiffs of their interest in owning and operating hotels is principally financial, whereas the importance to an individual of retaining his/her tenured employment can be much more substantial than that. Losing one's job may impair one's self-worth; one may find it difficult, if not impossible, without protracted and costly search to find an equivalent job, and may in the end have to settle for an inferior job at lower pay. Further, the individual may be forced to seek public assistance to pay for such necessities as food and shelter. In short, while the interest of plaintiffs in the benefits of owning and operating the [h]otels is not insubstantial, it is considerably less weighty than an individual's interest in the termination of social security benefits or tenured employment, and therefore does not come under due process protection.

*Id.* at 1084–85 (citations omitted).

---

[3] In *S & D Maintenance*, the Second Circuit cited *San Bernardino* after its observation that "[o]ther courts of appeals have also been reluctant to surround the entire body of public contract rights with due process protection." 844 F.2d at 967. Courts within the Second Circuit have continued to rely on *San Bernardino* ever since, as recently as June of this year. *See Grasson*, 2014 WL 2515408, at *8 nn. 105, 107 (citing *San Bernardino*, 825 F.2d at 1404).

Applying these three principles to the case at bar, the Court concludes that Plaintiff's "property interest in the [L]icensing Agreement with the City," (Pl.'s Mem. 18), is not a property interest that the Due Process Clause reaches.  Whatever interest Plaintiff had in the City's performance of that contract, it was categorically different from the interests at play in *Goldberg* and *Roth*.  The Licensing Agreement did not protect Plaintiff from the City's "revocation of a *status*, an estate within the public sphere characterized by a quality of either extreme dependence in the case of welfare benefits, or permanence in the case of tenure, or sometimes both." *S & D Maintenance*, 844 F.2d at 966 (footnote omitted).  Plaintiff was not "dependent" on the Licensing Agreement in the sense envisioned by *S & D Maintenance* and the Supreme Court decisions on which it relied.  The Licensing Agreement was instead "merely the product of [Plaintiff's] voluntary contractual relationship with [D]efendants." *Rosenfeld*, 108 F. Supp. 2d at 166; *see also Grasson*, 2014 WL 2515408, at *8 ("[The plaintiff] was not dependent on the contract, because he contracted with [the school district] . . . .").  Nor was the Licensing Agreement "permanent."  As Plaintiff alleges in the Complaint, the Licensing Agreement "explicitly provided that it [would] be effective only to the extent that [FFC] and/or its successors and/or assigns operates and/or maintains a grocery store/supermarket at 42 Broad Street."  (Compl. ¶ 22 (internal quotation marks omitted).)  The Licensing Agreement also required that the City complete all of the "improvements, alterations, installations and/or repairs" to the Fleetwood Municipal Parking Garage by September 1, 2009.  (Compl. ¶ 25.)  And in terms of the parking spaces themselves, the License Agreement only granted FFC "the exclusive right, license, and privilege to use" them until March 31, 2014, with conditional renewal options expiring in 2044.  (Compl. Ex. A(2), at 2–3.)  *Cf. A. Aiudi & Sons v. Town of Plainville*, 862 F. Supp. 737, 742 (D. Conn. 1994) ("As the underlying contract is not purported to confer benefits

20

which could be considered to relate to plaintiffs' 'status,' the interests stemming from the relationship do not amount to constitutionally protected property interests." (citation omitted)).

Like the plaintiffs in *Young*, Plaintiff's interest in the Licensing Agreement was "principally financial"—and while that interest "is not insubstantial, it is considerably less weighty than an individual's interest in the termination of social security benefits or tenured employment."  805 F. Supp. at 1084–85; *cf. Danese v. Knox*, 827 F. Supp. 185, 193 (S.D.N.Y. 1993) ("The conditional right to receive line of duty sick leave under the collective bargaining agreement is more akin to 'an ordinary contract right' than an indefinite guarantee of continued employment under *Roth* for the simple reason that it is quantifiable rather than intangible.").

Plaintiff places great emphasis on the fact that "the City has not contended, nor is there any language which can be found in the [L]icensing [A]greement, which would allow the City to terminate the agreement without cause, or to refrain from completing the parking improvements which it was required to perform under the [L]icensing [A]greement."  (Pl.'s Mem. 17–18.) Plaintiff is correct that, "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire and more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."  *Harrington*, 607 F.3d at 34 (internal quotation marks omitted) (quoting *Gonzales*, 545 U.S. at 756).  But whether a plaintiff has a "concrete *entitlement* to the rights asserted" is only a "threshold issue" that has no bearing on whether those rights are the *type* that the Due Process clause protects.  *Young*, 805 F. Supp. at 1084.  In other words, while entitlement is necessary, it is not sufficient.  If it were, the Second Circuit never would have identified the lurking presence of the "property interest" issue in *Walentas* or *S & D Maintenance.  See Walentas*, 862 F.2d at 418–19 ("Here, . . . as in *S & D Maintenance*, we need not definitively resolve the question whether the contractual rights

21

asserted . . . are of the kind protectible under section 1983, because they had not in any event achieved that concreteness of entitlement required by *Roth* and its progeny."); *S & D Maintenance*, 844 F.2d at 966 ("However the contours of a protectable property interest may be shaped in the future, this case affords no occasion for any extension of existing doctrine because S & D's contracts do not provide it with entitlements within the traditional understanding of *Roth*.").

Plaintiff also claims that "[a] written contract such as one in the case at bar has been found to be strong evidence of entitlement and demonstrates that Plaintiffs have a protectible property interest." (Pl.'s Mem. 16.)  In support of this contention, Plaintiff cites three cases: *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335 (2d Cir. 1994); *Christ Gatzonis Electrical Contractor, Inc. v. New York City School Construction Authority*, 23 F.3d 636 (2d Cir. 1994); and *Ezekwo v. New York City Health & Hospitals Corp.*, 940 F.2d 775 (2d Cir. 1991).  But those cases do not support Plaintiff's position.

For one, unlike the instant Action, all three of those cases involved employment contracts, which, as noted, receive special treatment.[4]  While it may be true, as the Second

_____

[4] While a contract between a state entity and a contractor may not be an "employment contract" in the purest sense, such a contract implicates the same values discussed in *San Bernardino* and *Young*.  *Cf. Arledge v. Startmar Sys., Inc.*, 948 F.2d 845, 848 (2d Cir. 1991) ("Even assuming that the Contract was between [the plaintiff] as an independent contractor and [the defendant], . . . the Contract is sufficiently analogous to an employment contract . . . .  [The plaintiff's] relationship with [the defendant] bore the earmarks of employment . . . ."); *Tesillo v. Emergency Physician Assocs., Inc.*, 376 F. Supp. 2d 327, 334 (W.D.N.Y. 2005) ("[D]escribing one as an 'independent contractor' does not necessarily make it so if the employer retains the ability to control the manner in which the independent contractor does his work."); *Malapanis*, 340 F. Supp. 2d at 191 ("[W]hile the Second Circuit's analogy to employment contracts in S & D Maintenance may have been apt, because the meter maintenance contract was for the performance of the service of maintaining the city's on-street meters, the employment analogy has only a tenuous connection to the supply contract at issue in this case.").

Circuit stated in *Christ Gatzonis*, that "[i]t is well established that a contractor has a right to timely payment for work it performs under a contract with a state agency, and that such right is a property interest protected by the due process clause," 23 F.3d at 639, Plaintiff is simply not a contractor seeking timely payment for work he performed under a contract with the City.

More importantly, this language from *Christ Gatzonis*, which Plaintiff quotes in his Memorandum of Law, (*see* Pl.'s Mem. 16), is actually a direct quote from *General Electric Co. v. New York State Department of Labor*, 936 F.2d 1448, 1453 (2d Cir. 1991)—an earlier Second Circuit case in which the court relied exclusively on a *statute*, not a *contract*, in support of its holding. *Id.* ("Here [the plaintiff's] property interest is implicit in [New York Labor Law] § 220 itself, which both creates an entitlement to payment of the full contract price, except if a contractor fails to pay the determined prevailing rates, § 220(8), and provides for a hearing to determine if cause exists to deprive a contractor of the full contract price. *See* § 220–b. Thus, *state law* supports [the plaintiff's] claim of entitlement." (emphasis added)); *see also Local 342*, 31 F.3d at 1196 ("The [plaintiff's] reliance upon our decision[] in . . . *General Elec. Co. v. New York State Dep't of Labor*, 936 F.2d 1448 (2d Cir. 1991), is misplaced because, in [that] case, *a state statute* clearly gave the claimants a legitimate claim of entitlement to the contested benefit." (emphasis added)).

Similarly, Plaintiff cites to *Horowitz* for the following statement: "[The plaintiff] does have a property right, however, in ultimately being paid for work properly performed under the . . . contracts." (Pl.'s Mem. 16 (quoting *Horowitz*, 28 F.3d at 1352).) But in support of that holding, the Second Circuit cited only to *Christ Gatzonis*, *General Electric*, and *Signet Construction Corp. v. Borg*, 775 F.2d 486, 489 (2d Cir. 1985). As discussed above, *Christ Gatzonis* and *General Electric* either implicitly or explicitly relied on statutory, not contractual,

23

law, and *Signet* was decided *before S & D Maintenance*.  In any event, in *Signet*, "[i]t was not disputed by the parties that a contractor's right to timely payment for work done under its contract with a state agency constitute[d] a property interest, deprivation of which by [one of the defendants] without procedural due process would violate its Fourteenth Amendment rights," 775 F.2d at 489, so the court had no reason to decide the issue.

In regard to *Ezekwo*, a court within the Second Circuit previously distinguished that case on grounds directly applicable here, in a case in which the plaintiff attempted to argue that a contract, "which provided that medical benefits could not be reduced during its term, in combination with [the plaintiff's] reliance on [a third-party health-benefits provider's] representation that [a] surgery would be covered, created a constitutionally protected property interest under the Fourteenth Amendment":

> [I]n *Ezekwo*, the Court did not find a property interest arising solely from a contract provision, but rather, it recognized a property interest in the plaintiff's alleged right to a certain important *status*—that of "Chief Resident."  Moreover, a property interest arising out of an entitlement to such status was contemplated in *S & D Maintenance*: "[i]n these contexts the Due Process Clause is invoked to protect something more than an ordinary contract right.  Rather, procedural protection is sought in connection with a state's revocation of a *status* . . . ."  Also, the *Ezekwo* Court again cautioned against simply equating contractual rights with property interests: "[N]ot every contractual benefit rises to the level of a constitutionally protected property interest.  It is neither workable nor within the intent of section 1983 to convert every breach of contract claim against a [state actor] into a federal claim."
> . . . .
>
> Even in *Ezekwo*, in finding a property interest in the plaintiff's appointment to Chief Resident, the Second Circuit emphasized there that the "interest in the position of Chief Resident was more than simply financial. . . .  [I]t denotes the culmination of years of study . . . it is necessary [sic] a position that an individual can occupy only once in his or her career."

*Tucker v. Darien Bd. of Educ.*, 222 F. Supp. 2d 202, 205–06 (D. Conn. 2002) (some alterations in original) (citations omitted) (quoting *S & D Maintenance*, 844 F.2d at 966; *Ezekwo*, 940 F.2d at 782).

In short, nothing in Plaintiff's Complaint or Memorandum of Law demonstrates that the Licensing Agreement is anything but the type of "ordinary," "routine," "one-off commercial interaction" that the Second Circuit and other courts have repeatedly found does not give rise to a property interest protected by the Due Process Clause.  Plaintiff has not cited, nor has the Court been able to locate, any case from within the Second Circuit in which a court found that a plaintiff had a protectible property interest in the type of contract at issue here.  *Cf. Eng v. Cash*, No. 10-CV-3117, 2012 WL 1031421, at *4 (E.D.N.Y. Mar. 8, 2012) (finding that "rights under [a] lease, a contract between [a landlord and a tenant], cannot be viewed as constitutionally protected or entitled to due process protection"), *adopted by* 2012 WL 1030475 (E.D.N.Y. Mar. 27, 2012); *Toussie v. Cnty. of Suffolk*, 806 F. Supp. 2d 558, 581 n.20 (E.D.N.Y. 2011) (finding that sales contracts between the plaintiffs and a county, which contracts gave the plaintiffs the right to purchase certain parcels of real estate, did "not rise to the level of a constitutionally protected interest," in part because such contracts were "ordinary"); *Seymour's Boatyard, Inc. v. Town of Huntington*, No. 08-CV-3248, 2009 WL 1514610, at *5 (E.D.N.Y. June 1, 2009) (finding that the plaintiff "fail[ed] to state a cognizable procedural due process claim" based on the town's revocation of a license agreement between the plaintiff and the town, which license agreement gave the plaintiff the right to operate the mooring and tender service at a town beach, in part "because [such] a contractual dispute generally does not rise to the level of protectible property interest" (citing, *inter alia*, *Redondo–Borges v. U.S. Dep't of Hous. & Urban Dev.*, 421 F.3d 1, 10 (1st Cir. 2005) ("We have held with a regularity bordering on the echolalic that a

25

simple breach of contract does not amount to an unconstitutional deprivation of property.")))
To the contrary, the well-developed body of case law described in detail above requires the
dismissal of Plaintiff's first and second causes of action.  Plaintiff may have a remedy in state
court, but he has no remedy here.[5]

### 2.  Substantive Due Process

In his third cause of action, Plaintiff asserts a substantive-due-process claim.
Specifically, Plaintiff asserts that Ms. Ben-Habib's "campaign to punish [Plaintiff] and FFC for
firing" Mr. Badaly deprived Plaintiff of his substantive-due-process rights.  (Compl. ¶¶ 67, 69,
72.)

"To state a claim for substantive due process [a] [p]laintiff must allege that: (1) []he had
a valid property interest and (2) [the] defendant[] infringed on that property right in an arbitrary
or irrational manner."  *DePrima v. City of N.Y. Dep't of Educ.*, No. 12-CV-3626, 2014 WL
1155282, at *10 (E.D.N.Y. Mar. 20, 2014) (internal quotation marks omitted) (quoting *Royal
Crown Day Care LLC v. Dep't of Health & Mental Hygiene of N.Y.*, 746 F.3d 538, 545 (2d Cir.
2014)).

_____

[5] As Plaintiff observes, "[a]lthough not specifically addressed by Defendants in their
[M]otion, the [C]omplaint actually contains two causes of action which allege violations of
[procedural] due process," the first of which "alleges violation . . . based on the Defendants [sic]
failure to comply with their obligations under the [L]icensing [A]greement to provide certain
parking improvements for the benefit of the supermarket," and the second of which "alleges that
[Ms. Ben-Habib] as policymaker for the City, orchestrated a campaign to delay the opening of
the supermarket, while at the same time streamlining the application process for a competitor, all
in an effort to punish Plaintiffs for termination [Mr. Badaly]."  (Pl.'s Mem. 14–15.)  However,
the only property interest related to either of these causes of action that Plaintiff identifies in his
Complaint or Memorandum of Law is his alleged "property interest in the [L]icensing
[A]greement with the City."  (*Id.* at 18.)  As a result, the Court has considered only whether this
alleged interest is protected by the Due Process Clause.  However, Plaintiff will be provided with
an opportunity to amend his Complaint to specify whether his second cause of action is premised
on the existence of a different property interest.  *See infra* note 6.

26

As to the first prong, Defendants argue that, "[t]hough it is difficult to discern exactly what 'fundamental' right . . . [P]laintiff claims to possess, to the extent that he is asserting a 'property and liberty right,' his claim fails." (Defs.' Mem. 18.)  In response, Plaintiff appears to refer the Court to a different section of his Memorandum of Law, writing that, "*As discussed above*, the Plaintiffs possessed a legitimate property interest in operating a supermarket at 42 Broad Street." (Pl.'s Mem. 19 (emphasis added).)  The only discussion of any property interest "above" comes in the context of Plaintiff's argument that his property interest in the Licensing Agreement is constitutionally cognizable for the purposes of his procedural-due-process claim. (*See id.* at 15–18.)

However, the Court has already rejected Plaintiff's argument that the Licensing Agreement gave rise to a constitutionally cognizable property interest in the procedural-due-process context.  *See Safepath Sys. LLC v. N.Y.C. Dep't of Educ.*, — F. App'x —, 2014 WL 1688342, at *2 (2d Cir. Apr. 30, 2014) ("Plaintiffs' substantive due process claim was properly dismissed, because they did not identify a constitutionally-protected property right." (citing *Local 342*, 31 F.3d at 1196 ("In view of our conclusion that [plaintiffs] possessed no protectible property interest . . . , it would appear obvious that [defendants'] termination of those payments in no way violated the [plaintiffs'] substantive due process rights."))); *see also Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 229 (1985) (Powell, J., concurring) ("Even if one assumes the existence of a property right, . . . not every such right is entitled to the protection of substantive due process.  While property interests are protected by procedural due process even though the interest is derived from state law rather than the Constitution, substantive due process right are created only by the Constitution."))).  The above-described property interest in the Licensing Agreement is the only such interest that Plaintiff identifies in his Memorandum of Law, and his

27

Complaint is entirely silent on the subject.  (*See* Compl. ¶¶ 66–73.)  Accordingly, the Court also

dismisses Plaintiff's third cause of action.[6]

### 3.  *Monell*

In Plaintiff's fourth cause of action, he alleges that the deprivations of his constitutional

rights were in part caused by the City's failure "to adequately provide for a system of checking

for conflicts of interest in relation to projects submitted by [Mr. Badaly] for approval by the

City's Building Department," as well as its failure "to adequately supervise the employees of the

City's Building Department to prevent special treatment being given to projects involving plans

drawn by [Mr. Badaly]."  (Compl. ¶¶ 75–79.)  But once again, the Court's prior determination

that Plaintiff has no protectible property interest in the Licensing Agreement is fatal.

"*Monell* does not provide a separate cause of action for the failure by the government to

train its employees; it *extends* liability to a municipal organization where that organization's

---

[6] In his Memorandum of Law, Plaintiff makes a second passing mention of his "legitimate interest in opening [his] supermarket business," which interest he describes as a "property right."  (Pl.'s Mem. 20.)  But unlike his first mention of such an interest, this second mention is divorced from any reference to the alleged property right underlying his procedural-due-process claim.  (*Id.*)  Thus, although the best reading of Plaintiff's Complaint and Memorandum of Law suggests that he is attempting to base his procedural-due-process and substantive-due-process claims on the same alleged interest—his "property interest in the [L]icensing [A]greement with the City," (*id.* at 18)—the two references to Plaintiff's supposed "legitimate interest in opening [his] supermarket business" give the Court pause, as they indicate that Plaintiff may in fact be attempting to distinguish between the property interest underlying his first cause of action, one the one hand, and the property interest underlying his second, third, and fourth causes of action, on the other.  Therefore, as is the case in regard to Plaintiff's second cause of action, Plaintiff will be provided with an opportunity to amend his Complaint to clarify precisely what "property right" underlies his third.  However, Plaintiff should be aware that he must specifically identify the interest at issue in any Amended Complaint that he files.  Vague and highly generalized allegations that Defendants "began a campaign to punish" Plaintiff, "frustrate[d]" or "obstruct[ed] the progress" in "completing" or "opening the Key Food supermarket," or "streamlin[ed] . . . the application process for FCC competitors," (Compl. ¶¶ 59–61, 64, 67–69, 72), leave unclear what protectible property interest is implicated, and will therefore be unlikely to survive any subsequent Motion To Dismiss that Defendants may file.

failure to train, or the policies or customs that is has sanctioned, led to an independent

constitutional violation." *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 439

(2d Cir. 2009) (internal quotation marks omitted) (quoting *Segal v. City of New York*, 459 F.3d

207, 219 (2d Cir. 2006)).  Therefore, because the Court has already determined that Plaintiff has

not pleaded a constitutional violation, his "*Monell* claim [is] . . . properly dismissed." *McKenna*

*v. Inc. Vill. of Northport*, 331 F. App'x 804, 806 (2d Cir. 2009).[7]

### 4.  Breach of Contract

Lastly, in his fifth cause of action, Plaintiff alleges a state-law breach-of-contract claim.

(*See* Compl. ¶¶ 81–86.)  Because this claim does not present a federal question, *see* 28

U.S.C. § 1331, and because Plaintiff does not allege that his citizenship is diverse with respect to

that of Defendants, *see id.* § 1332, "the Court may entertain [Plaintiff's breach-of-contract claim]

only pursuant to a theory of supplemental jurisdiction, *see id.* § 1367." *Weslowski v. Zugibe*, —

F. Supp. 2d —, 2014 WL 1612967, at *22 (S.D.N.Y. Mar. 31, 2014).

"[A] district court[] may decline to exercise supplemental jurisdiction over" related state-

law claims that form part of the same case or controversy under Article III of the United States

Constitution "if . . . the district court has dismissed all claims over which it has original

jurisdiction."  28 U.S.C. § 1367(c)(3).  "Once a district court's discretion is triggered under

§ 1367(c)(3), it balances the traditional values of judicial economy, convenience, fairness, and

comity in deciding whether to exercise jurisdiction." *Kolari v. N.Y.-Presbyterian Hosp.*, 455

F.3d 118, 122 (2d Cir. 2006) (citation and internal quotation marks omitted) (quoting *Carnegie-*

---

[7] The Court's dismissal of Plaintiff's *Monell* claim will be without prejudice, as
amending his Complaint in regard to his second and third causes of action has the potential to
cure the deficiencies the Court has identified in regard to his fourth.  *See supra* notes 5–6.

*Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  "In weighing these factors, the district court is aided by the Supreme Court's . . . guidance . . . that in the usual case in which all federal-law claims are eliminated before trial, the balance of factors will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Id.* (alterations and internal quotation marks omitted) (quoting *Cohill*, 484 U.S. at 350 n.7).  Here, none of the factors that the Supreme Court enunciated in *Cohill*—"judicial economy, convenience, fairness, [or] comity"—militate against such dismissal, and there is no reason to believe that this is not otherwise a "usual case in which all federal-law claims are eliminated before trial."  *Id.* Accordingly, Plaintiff's state-law breach-of-contract claim is dismissed without prejudice.

## III.  CONCLUSION

For the foregoing reasons, the Court grants Defendants' Motion To Dismiss.  Plaintiff's first cause of action is dismissed with prejudice.  Plaintiff's second, third, fourth, and fifth causes of action are dismissed without prejudice.  Plaintiff is granted leave to file an Amended Complaint within 30 days of the issuance of this Opinion, which Amended Complaint may remedy the deficiencies that the Court has identified above.  Should Plaintiff fail to file an Amended Complaint before that deadline, the Court will dismiss his second, third, and fourth claims with prejudice, and will decline to exercise supplemental jurisdiction over his fifth.

The Clerk is respectfully requested to terminate the pending Motion.  (*See* Dkt. No. 12.)

SO ORDERED.

Dated:      September    S    , 2014
            White Plains, New York

                                    KENNETH M. KARAS
                                    UNITED STATES DISTRICT JUDGE

30